UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GAMDUR NARAIN,

                                        Petitioner,        DECISION and ORDER

-vs-

                                                                          19-CV-6361 (CJS)

JEFFREY SEARLS, FACILITY ACTING
DIRECTOR BUFFALO FEDERAL
DETENTION FACILITY,[1]

                                        Respondent.
_____

## INTRODUCTION

Petitioner Gamdur Narain ("Narain") has been in custody since January 12, 2018, when he was detained by United States Immigration and Customs Enforcement ("ICE"). Now before the Court is Narain's petition for habeas corpus pursuant to 28 U.S.C. § 2241, alleging that his prolonged detention by Respondent Jeffrey Searls ("Searls") is in violation of the Fifth and Eighth Amendments to the United States Constitution. For the reasons set forth below, Narain's petition is denied.

## BACKGROUND

Narain is a native and citizen of India, who illegally entered the United States at an unknown time and location. Decl. Off'r Hanson, ¶ 5, Aug. 9, 2019, ECF No. 8-2. In January 1994, Narain was convicted of driving while intoxicated. Ex. A, 84, Aug. 9, 2019,

---

[1] Respondent correctly observes that although Petitioner named several respondents, the only proper respondent is the one with direct control over Petitioner: Jeffrey Searls, the Facility Acting Director for the Buffalo Federal Detention Facility. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (citing 28 U.S.C. § 2242 and § 2243); *Nunez v. Searls,* No. 18-CV-6463, 2019 WL 2524308, at *2 (W.D.N.Y. June 19, 2019). The Clerk is directed to amend the caption of this case accordingly, and dismiss the other named Respondents.

ECF No. 8-3. In 1996, Narain applied for advance parole, departed the United States to visit his mother in India, and was subsequently paroled back into the United States on February 14, 1996 for a period not to exceed August 18, 1996. Decl. Off'r Hanson at ¶ 5.

In February 2002, Narain submitted an I-485 application to register as a permanent resident or adjust his status under the Legal Immigration Family Equity Act. However, that application was denied in September 2006. *Id.* at ¶ 6. His appeal to the Administrative Appeals Office was dismissed in May 2008. *Id.*

On July 20, 2011, Narain was arrested for selling tobacco to a minor. *Id.* at ¶ 7. On July 28, 2011, he was placed in removal proceedings with a Notice to Appear (NTA) that charged him as removable from the United States pursuant to 8 U.S.C. § 1227(a)(7)(i)(I) ("an immigrant who, at the time of application for admission, is not in possession of a valid . . . entry document"). *Id.* at ¶ 8. That same day, Narain was released on a $5,000 bond. *Id.* at ¶ 9.

At his merits hearing before an Immigration Judge ("IJ") on July 8, 2014, Narain, through counsel, conceded the charge of removability. *Id.* at ¶ 10. On September 2, 2016, the IJ denied Narain's application for cancellation of removal. *Id.* at ¶ 11; Ex. A, ECF No. 8-3 at 10. Narain appealed, but the Board of Immigration Appeals ("BIA") dismissed the application on September 29, 2017. Ex. A at 56. Narain did not file a petition for review with the Second Circuit at that time. *Id.*

On October 10, 2017, DHS made a demand on the 2011 bondholder to produce Narain, but Narain did not appear. Ex. A at 76. A notice of breach of bond was issued on November 21, 2017. *Id.*

On January 12, 2018, federal ICE officers arrested Narain outside of his home in Little Falls, New York, and took him into custody. Ex. A at 70. On January 22, 2018, ICE requested travel documents for Narain from the Consulate of India, and soon thereafter issued a Warrant of Removal. *Id.* at 64–65. On January 29, 2018, Narain filed a motion to reopen his removal proceedings with the BIA, and filed a second motion with additional evidence on February 13, both of which argued ineffective assistance of counsel in prior proceedings. *Id.* at 77. On April 6, 2018, the BIA denied Narain's motion to reopen. *Id.* at 79.

On May 2, 2018, Narain filed with the Second Circuit a petition for review of the BIA's denial of his motion to reopen. Pet., *Narain v. Barr*, 2d Cir., No. 18-1336, May 2, 2018, ECF No. 1. He filed a motion to stay his removal on May 25, 2018. Mot. Stay of Removal, No. 18-1336, ECF No. 13. The government opposed Narain's motion to stay. Opp. to Mot. Stay of Removal, No. 18-1336, June 1, 2018, ECF No. 23. To date, the Second Circuit has not ordered a stay of removal.

Narain has been detained since January 12, 2018. ICE provided him with a "Notice to Alien of File Custody Review" on February 28, 2018, which notified Narain of a review of his custody status on April 4, 2018, and invited him to submit documents he wanted the district director to consider regarding his release. Ex. A, at 80. The result of that review was a determination that Narain would continue to be detained. *Id.* at 81. Narain's custody status was reviewed again in 2019, and on May 2, 2019 he received another "Decision to Continue Detention" letter. *Id.* at 84–86.

While his petition for review of his motion to reopen is under consideration with the Second Circuit, Narain brings the instant petition for habeus corpus *pro se* under 28

3

U.S.C. § 2241. "It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (citations and internal quotation marks omitted).

## THE HABEAS PETITION

28 U.S.C. § 2241(c)(3) provides that a district court may grant a writ of habeas corpus within its jurisdiction to prisoners who are "in custody in violation of the Constitution or laws or treaties of the United States." In his petition, Narain asserts that his "detention without a meaningful and constitutionally sufficient bond hearing by a neutral decision maker without clear and convincing proofs of him being danger [sic] to community and flight risk violates the due process clause of the fifth amendment and the eighth amendment's excessive bail clause." Pet., ¶ 3, May 14, 2019, ECF No. 1. Therefore, Narain asks this Court to order his release "with appropriate conditions of supervision" or, in the alternative, order his "release unless [the Government] schedule a hearing before an immigration judge where . . . the government must establish by clear and convincing evidence that [Narain] presents a risk of flight or danger . . ." *Id.* at ¶ 4—5.

## STATUTORY BASIS FOR NARAIN'S DETENTION

At the outset, this Court must consider the statutory basis for Narain's detention. Whether Narain's detention is governed by 8 U.S.C. § 1226 ("§ 1226") or 8 U.S.C. § 1231 ("§ 1231") may impact whether he is entitled to relief and, if so, the form of that relief. *Enoh v. Sessions*, 236 F. Supp. 3d 787, 791 (W.D.N.Y. 2017), *appeal withdrawn*, No. 17-1236, 2017 WL 6947858 (2d Cir. Dec. 7, 2017). The distinction between the two statutes comes down to an alien's status in relation to the ninety-day period that follows

immediately after "an alien is ordered removed" (the "removal period").  § 1231(a)(1)(A). Prior to the removal period, the alien's detention is governed by § 1226; during and after the removal period, the alien's detention is governed by § 1231.  *See Enoh*, 236 F. Supp.3d at 793.

Narain argues that the statutory basis for his detention is § 1226(a), which governs the arrest and detention of aliens prior to issuance of a final order of removal.  § 1226(a) provides that "the Attorney General . . . (1) may continue to detain the arrested alien; [or] (2) may release the alien on (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or (B) conditional parole . . ." If ICE elects to detain the alien, the alien may request a bond hearing before an Immigration Judge.  *Guerra v. Shanahan*, 831 F.3d 59, 62 (2d Cir. 2016), citing 8 C.F.R. § 1236.1(d)(1).

Searls argues, on the other hand, that the statutory basis for Narain's detention is 8 U.S.C. § 1231, which governs the detention of aliens during and after the removal period.  Under § 1231(a)(2), detention during the ninety-day removal period is mandatory. After the removal period has expired, detention is discretionary, but a bond hearing is not authorized if removal is "reasonably foreseeable."  *Guerra*, 831 F.3d at 62 (citing 8 U.S.C. § 1231(a)(6)).  Instead, the statute "limits an alien's post-removal period detention to a period reasonably necessary to bring about that alien's removal from the United States." *Zadvydas*, 533 U.S. at 689.

§ 1231(a)(1)(B) provides that the removal period begins at the latest of the following events:

(i)   The date the order of removal becomes administratively final;

5

(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order;

(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

*Hechavarria v. Sessions,* 891 F.3d 49, 55 (2d Cir. 2018), as amended (May 22, 2018) (quoting 8 U.S.C. § 1231(a)(1)(B)).

Here, there is no question that Narain's order of removal has become "administratively final" pursuant to § 1231(a)(1)(B)(i). 8 C.F.R. § 1241.1(a) states that "[a]n order of removal made by the immigration judge . . . shall become final . . . [u]pon dismissal of an appeal by the Board of Immigration Appeals . . ." Hence, Narain's order of removal became "administratively final" when the BIA dismissed his appeal on September 29, 2017. Ex. A, ECF No. 8-3 at 56.

Instead, the question is whether the beginning of the removal period has been forestalled under § 1231(a)(1)(B)(ii) by Narain's appeal to the Second Circuit. In *Hechavarria*, the Second Circuit considered § 1231(a)(1)(B)(ii) and observed that "the unambiguous language of the statute makes plain that" an alien cannot be detained pursuant to § 1231 when he or she has filed a petition for review with the court of appeals and received a stay. *Hechavarria*, 891 F.3d at 55.

In the instant case, despite Narain's motion for a stay of the order of removal, the Second Circuit has not ordered a stay. *Narain v. Barr,* 2d Cir. No. 18-1336. However, other courts in this district have found that the informal agreement between the Department of Homeland Security ("DHS") and the Second Circuit,[2] in which DHS

---

[2] *In re Matter of Immigration Petitions for Review Pending in the United States Court of Appeals for the Second Circuit*, F.3d 160 (2d Cir. 2012). The Second Circuit wrote, "While a petition is pending in this Court, the Government's forbearance policy has assured that removal will not occur." *Id.* at 162.

forbears removal of aliens who have appeals pending in that court, is equivalent to a court-ordered stay. *See, e.g., Falodun v. Session*, No. 6:18-CV-06133-MAT, 2019 WL 6522855, at *4 (W.D.N.Y. Dec. 4, 2019); *Hemans v. Searls*, No. 18-CV-1154, 2019 WL 955353, at *5 (W.D.N.Y. Feb. 27, 2019). Therefore, these Courts have evaluated the detention of aliens with appeals pending in the Second Circuit under § 1226, as if the alien were being detained prior to the removal period. *Id.*

With due respect, this Court disagrees with the courts of this district that have found the DHS-Second Circuit agreement to be equivalent to a court-ordered stay. "It is our duty to give effect, if possible, to every clause and word of a statute." *Hechavarria*, 891 F.3d at 55 (quoting *United States v. Menasche*, 348 U.S. 528, 538—39 (1955)) (internal quotations omitted). Under § 1231, "[t]here are three scenarios that can trigger the start of the removal period, but only the *latest* of those scenarios is the trigger." *Id.* In Narain's case the first trigger, an "administratively final" order of removal, occurred on September 29, 2017 when the BIA dismissed his appeal of the IJ's order of removal. § 1231(a)(1)(A)(i). Neither of the other two triggers has occurred: there has been no "court order[ed] a stay of the removal of the alien" and the alien has not been "released from detention or confinement." § 1231(a)(1)(A)(ii)–(iii).

In *Nken v. Holder*, 556 U.S. 418 (2009), the Supreme Court discussed the significance of a court of appeals' express order to stay an order of removal. The Supreme Court explained:

> When Congress passed [the Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA")], it repealed the old judicial-review scheme set forth in [8 U.S.C.] § 1105a and instituted a new (and significantly more restrictive) one in 8 U.S.C. § 1252. The new review system substantially limited the availability of judicial review and streamlined all challenges to a removal order into a single proceeding: the petition for

7

> review . . .
>
> Before IIRIRA, courts of appeals lacked jurisdiction to review the deportation order of an alien who had already left the United States . . . . Accordingly, an alien who appealed a decision of the BIA was typically entitled to remain in the United States for the duration of judicial review. This was achieved through a provision providing most aliens with an automatic stay of their removal order while judicial review was pending . . . .
>
> IIRIRA inverted these provisions to allow for more prompt removal. First, Congress lifted the ban on adjudication of a petition for review once an alien has departed . . . . Second, because courts were no longer prohibited from proceeding with review once an alien departed . . . . Congress repealed the presumption of an automatic stay, and replaced it with the following: "Service of the petition on the officer or employee does not stay the removal of an alien pending the court's decision on the petition, unless the court orders otherwise."

*Nken*, 556 U.S. 418, 424–25 (internal citations omitted).

In other words, with the passage of IIRIRA in 1996, Congress intentionally eliminated the presumption of an automatic stay for aliens seeking judicial review of their order of removal, and replaced that presumption with the requirement that the court of appeals expressly order a stay. *See* 8 U.S.C. § 1252 (b)(3)(B). In this statutory context, the DHS-Second Circuit forbearance agreement does not rise to the level of a court-ordered stay. Rather, it is a pragmatic agreement in the interests of "docket control and efficient allocation of judicial resources." *In re Immigration Petitions for Review Pending in U.S. Court of Appeals for Second Circuit*, 702 F.3d at 161. Indeed, the Second Circuit's explicit justification for forming the agreement was to eliminate wasted time on "low priority" cases with a low likelihood of removal of the alien once a final order is issued. *Id.* at 160—61. Further, procedures for accommodating government efforts to remove the petitioner while an appeal is pending are explicitly contemplated in the Second Circuit's outline of the procedures. *Id.* at 162 ("If the Government decides to resume efforts to

remove a petitioner, the Government will notify both the Court and Petitioner at least 21 days before removing Petitioner").

For the foregoing reasons, the Court finds that Narain is an alien subject to a final order of removal pursuant to 8 U.S.C. § 1231, and it evaluates the merits of his claims under the § 1231 criteria discussed by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001).

NARAIN'S FIFTH AND EIGHTH AMENDMENT CLAIMS

<u>Narain's detention does not violate the Fifth Amendment's "Due Process" Clause</u>.

Narain argues that his continued detention without a bond hearing violates his due process rights under the Fifth Amendment. "In *Zadvydas*, the Supreme Court was presented with the challenge of reconciling the INA's apparent authorization of indefinite post-removal order detention with the Fifth Amendment's prohibition against depriving a person of their liberty without due process." *Diaria v. Sessions*, No. 17-CV-6028 (CJS), 2018 WL 3429270, at *2–3 (W.D.N.Y. July 16, 2018). The Court determined that, in addition to the mandatory ninety day detention following the final order of removal, § 1231(a) authorizes detention for additional time that is "reasonably necessary" to accomplish the alien's removal from the United States. *Zadvydas*, 533 U.S. at 699–700.

Recognizing the practical necessity of setting a "presumptively reasonable" time within which to secure removal, the court adopted a period of six months "for the sake of uniform administration in the federal courts . . . ." *Id.* at 701.

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month

9

> presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.* at 701. *See also Nunez v. Searls*, No. 18-CV-6463 CJS, 2019 WL 2524308, at *2 (W.D.N.Y. June 19, 2019); *Quinglin Zeng v. Sessions*, No. 17-CV-6334 (CJS), 2017 WL 3582439, at *3 (W.D.N.Y. Aug. 18, 2017).

In this case, Narain has failed to show that there is not a significant likelihood of his removal to India in the foreseeable future. *Nunez*, 2019 WL 2524308 at *3. According to the Second Circuit's docket, Narain's case was submitted to a panel of judges on September 23, 2019. *Narain*, No. 18-1336, Sept. 23, 2019, ECF No. 67. Moreover, Respondent Searls represents that "if the Second Circuit denies Narain's stay motion, it is extremely likely that DHS will be able to obtain a travel document and remove Narain to India." Decl. Off'r Hanson at ¶ 21. Searls also represents that from 2015 to 2017, DHS has successfully repatriated 2391, 2426, and 3350 aliens to India, respectively. *Id.* Thus, it appears to this Court that there is a significant likelihood of Narain's removal to India in the foreseeable future, and that his continued detention does not violate his Fifth Amendment due process rights at this point.

<u>Narain's detention does not violate the Eighth Amendment's "Excessive Bail" Clause</u>.

Narain also asserts that his prolonged detention violates the Eighth Amendment, which prohibits "excessive bail." Pet. ¶ 48, ECF No. 1 (quoting U.S. Const., amend. VIII). Citing Justice Breyer's dissent in *Jennings v. Rodriguez,* 138 S. Ct. 830 (2018), Narain asserts that "[t]he government's categorical denial to certain non-citizens violates the right to bail encompassed by the Eighth Amendment." Pet. ¶ 49. The Court finds this argument unpersuasive.

10

The Eighth Amendment states, in part, "Excessive bail shall not be required . . ." U.S. Const., amend. VIII. It is well settled that the Excessive Bail Clause does not "accord a right to bail in all cases, but merely [provides] that bail shall not be excessive in those cases where it is proper to grant bail." *Carlson v. Landon*, 342 U.S. 524, 545 (1952). *See also, De La Rosa v. Barr*, No. 6:19-CV-06418-MAT, 2019 WL 5842906, at *6 (W.D.N.Y. Nov. 7, 2019); *Leader v. Blackman*, 744 F. Supp. 500, 509 (S.D.N.Y. 1990).

Narain fails to point to any binding authority establishing that it is proper to grant him bail under the Eighth Amendment, particularly in light of the fact that he has already breached his bond on a prior occasion. *See* Ex. A, ECF No. 8-3 at 76. Therefore, the Court rejects Narain's Eighth Amendment claim. *De La Rosa v. Barr*, 2019 WL 5842906 at *6 (citing *Banda v. McAleenan*, 385 F. Supp.3d 1099, 1121 (W.D. Wash. 2019)).

CONCLUSION

Narain's petition is denied, and this action is dismissed. Therefore, it is hereby

ORDERED, that the Clerk amend the caption of this case to comport with the caption used in this Decision and Order; the remaining parties are dismissed from the case; and it is further

ORDERED, that Petitioner's application for a writ of habeas corpus is denied.

SO ORDERED.

Dated: January 8, 2020
Rochester, New York        ENTER:


/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge

11